UNITED STATES DISTRICT COURT    O
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| SADIE FRIEDRICHS, § | |
| § | |
|     Plaintiff, § | |
| v. § | CIVIL ACTION NO. 7:12-CV-392 |
| § | |
| GEOVERA SPECIALTY INSURANCE § | |
| CO., § | |
| § | |
|     Defendant. § | |

## OPINION AND ORDER

Pending before the Court are several motions, including: the Motion to Remand[1] filed by Plaintiff Sadie Friedrichs ("Friedrichs"); the "Motion to Vacate *Ex Parte* Umpire Appintment and Response to Plaintiff's Motion for Appointment of Umpire"[2] ("Motion to Vacate") and the Motion to Set Aside the Appraisal Award"[3] ("Motion to Set Aside"), both of which were filed by Defendant Geovera Specialty Insurance Company ("Geovera"). These motions are attended by numerous, related filings.[4] After considering the motions, responses, and relevant authorities, the Court **DENIES** the Motion to Remand, **GRANTS** the Motion to Vacate, and **GRANTS** the Motion to Set Aside.

**I.**     **BACKGROUND**

The Court's analysis benefits from a detailed, procedural history of the case prior to removal. On September 14, 2012, Friedrichs filed her original petition in state court, seeking a declaratory judgment of insurance-policy coverage and Defendant's liability for property

---

[1] Dkt. No. 9 ("Motion to Remand").
[2] Dkt. No. 4 ("Motion to Vacate").
[3] Dkt. No. 11 ("Motion to Set Aside").
[4] Dkt. Nos. 12 ("Remand Response"), 10 ("Vacate Response") & 13 ("Set-Aside Response").

damage resulting from a hailstorm.[5] On the same day, Friedrichs filed an *ex parte* motion for the appointment of an umpire, which was granted three days later by order of the state court.[6] On October 12, 2012, Geovera answered Friedrichs' claim with a general denial.[7] On October 16, 2012, Friedrichs filed her self-styled "First Amended Original Petition" ("Amended Petition"), along with a motion to compel Geovera's participation in the appraisal process.[8] Finally, on October 19, 2012, Geovera removed the case to this Court.[9]

On October 24, 2012, Geovera filed a motion to vacate the appointment of the umpire ("Motion to Vacate").[10] On November 13, 2012, Friedrichs filed a motion to remand this action to state court ("Motion to Remand").[11] Shortly thereafter, on November 15, 2012, Geovera filed a motion to set aside the appraisal award ("Motion to Set Aside").[12] The parties filed numerous responses and replies to those filings. Because the nature of the motion to remand challenges the Court's subject matter jurisdiction over this dispute, the Court first resolves that motion, and considers the other motions only after ascertaining jurisdiction.

## II.   MOTION TO REMAND

Friedrichs asserts two bases for remand, first that the Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000, and alternatively that the Court should decline jurisdiction due to the nature of the case.[13] Geovera filed a response in

---

[5] Dkt. No. 1, Attach. 3 at pp. 2 & 3 ("Original Petition").
[6] *See* Dkt. No. 1, Attachs. 4 ("Motion for Appointment") & 5 ("Order of Appointment").
[7] Dkt. No. 1, Attach. 7 ("Answer").
[8] Dkt. No. 1, Attachs. 8 ("Amended Petition") & 9 ("Motion to Compel"). The Court notes that the copy of the Amended Petition which was attached to the Notice of Removal is incomplete, lacking the second page; however, a complete copy of the Amended Petition was attached to Friedrich's Motion to Remand as Exhibit A, which the Court references for its analysis.
[9] Dkt. No. 1 ("Notice of Removal").
[10] *See* Motion to Vacate.
[11] *See* Motion to Remand.
[12] *See* Motion to Set Aside.
[13] Motion to Remand at pp. 3-4.

opposition to the remand, and Friedrichs then filed a reply.[14] The Court now independently considers the arguments for each asserted remand-basis.

### A. Amount in Controversy

As her first point supporting remand, Friedrichs argues that the amount in controversy does not exceed $75,000, and states her willingness to provide a stipulation to that effect.[15] The Court first determines whether the amount in controversy satisfies the jurisdictional threshold, only then examining whether a post-removal stipulation may serve to reduce the amount in controversy below that threshold.

In *Gebbia v. Wal-Mart Stores, Inc.*,[16] the Fifth Circuit reiterated that the removing party bears the burden of proving the propriety of removal:

> "[T]he removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. The defendant may prove that amount either by demonstrating that the claims are likely above $75,000 in sum or value, or by setting forth the facts in controversy that support a finding of the requisite amount."[17]

Consistent with the sensitivity to the federalism concerns raised by removal,[18] the Court strictly construes the removal statute and "any doubt as to the propriety of removal should be resolved in favor of remand."[19]

In her motion to remand, Friedrichs argues that the amount in controversy does not meet the jurisdictional threshold because the amended petition, the live pleading at the time of removal, "seeks a declaratory judgment and attorney fees related to the declaratory judgment

---

[14] Dkt. No. 14 ("Remand Reply").
[15] Motion to Remand at p. 4 ("Plaintiff is willing to stipulate that the amount in controversy does not exceed $75,000.").
[16] 233 F.3d 880 (5th Cir. 2000).
[17] *Gebbia*, 233 F.3d at 882-83 (citations omitted).
[18] Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365 (5th Cir. 1995) (citing Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 809, (1986)).
[19] Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008) (quoting In re Hot-Hed, Inc., 477 F.3d 320, 323 (5th Cir. 2007) (internal quotations omitted).

action," an amount which she contends does not exceed $75,000 because she "does not seek damages for breach of contract or any other monetary relief."[20] In response, Geovera notes that the amended petition uses language which indicates a breach of contract claim rather than a request for a declaratory judgment, and that this claim increases the amount in controversy above the jurisdictional threshold.[21] In her reply, Friedrichs repeats her position that the amended petition seeks a declaratory judgment, not a breach of contract claim.[22] It is unsurprising that the parties disagree about the nature of the relief requested in the live pleading, since Friedrichs' arguments rely on this distinction to artificially reduce the amount in controversy.[23]

Therefore, while the Court acknowledges the merit of Geovera's argument that the amended petition contains language suggesting a breach of contract claim,[24] the Court considers the motion under Friedrichs' asserted rubric, *i.e.* that the amended petition only seeks a declaratory judgment and attorney's fees, merely to illustrate that it leads to the same jurisdictional conclusion despite Friedrichs' argument. This is because, contrary to Friedrichs' apparent assertion that a declaratory judgment action, standing alone, contributes no value to the amount-in-controversy calculation,[25] the Fifth Circuit held in *St. Paul Reinsurance Co., Ltd. v. Greenberg*[26] that the value of a Texas-based, insurance-coverage declaratory judgment action is "the value of the right to be protected or the extent of the injury to be prevented."[27] In language highly applicable to the instant facts, the *Greenberg* Court continued:

---

[20] Motion to Remand at ¶ 16.
[21] Remand Response at ¶ 4.4.
[22] *See* Motion to Remand *and* Remand Reply.
[23] *See generally* First Amended Petition.
[24] *See* First Amended Petition at pp. 2 (noting that Plaintiff asserts multiple "claims" arising in Hidalgo County, Texas) & 3 (asserting that Geovera "are [sic] in breach of the subject insurance policy in question.").
[25] *See* Motion to Remand at ¶ 16 (arguing that "[t]he only monetary relief Plaintiff seeks is attorney fees related to the declaratory judgment action, and that the amount does not exceed $75,000.").
[26] 134 F.3d 1250 (5th Cir. 1998).
[27] *Greenberg*, 134 F.3d at 1253.

> When an insurer seeks a declaratory judgment regarding the coverage provided by an insurance policy, "the 'object of the litigation' is the policy and the 'value of the right to be protected' is plaintiff's potential liability under that policy." Thus, in addition to policy limits and potential attorney's fees, items to be considered in ascertaining the amount in controversy when the insurer could be liable for those sums under state law are inter alia penalties, statutory damages, and punitive damages-just not interest or costs.[28]

As the passage above makes clear, the Fifth Circuit has patently rejected Friedrichs' assertion that the amount in controversy should only include attorney's fees, and the Court will not indulge the legal fantasy that the monetary value of underlying rights and liabilities is not intrinsic to a declaratory judgment of those rights and liabilities.

As a result, the Court now considers whether Geovera has met its burden to prove a jurisdictionally-sufficient "value of the right to be protected," for which it has provided two forms of supporting evidence: (1) a declaration attesting to policy limits of $900,000.00 ("Policy-Limits Declaration"); and (2) a demand letter and accompanying estimate of $126,203.87 ("Demand Letter").[29] At the outset, the Court notes that either evidentiary source independently and unambiguously supports an amount in controversy that satisfies the jurisdictional threshold. However, since the analysis involves the propriety of the Court's subject matter jurisdiction, the Court nevertheless ascertains the proper evidentiary source for calculating the amount in controversy in this case.

The Court guides its analysis by *Hartford Insurance Group v. Lou-Con Inc.*,[30] in which the Fifth Circuit specifically considered whether, in a declaratory judgment action, the policy limits or the value of the underlying claim are indicative of the amount in controversy.[31] The *Hartford* Court held that policy limits are appropriate only in limited circumstances, such as

---

[28] *Id*.
[29] Dkt. No. 1, Attachs. 11 ("Policy-Limits Declaration") & 12 ("Demand Letter").
[30] 293 F.3d 908 (5th Cir. 2002).
[31] *Hartford*, 293 F.3d at 910.

where the declaratory action implicates the validity of the entire contract between the parties.[32] However, where the claim involves the applicability of the insurance policy to a particular occurrence, "the jurisdictional amount in controversy is measured by the value of the underlying claim."[33] In this case, the claim is of the latter type, as Friedrichs seeks a declaratory judgment regarding the policy's coverage of a specific event, and the Court therefore considers the demand letter as the primary evidence of the amount in controversy.

Here, as in *Hartford*, the removing party has provided a demand letter in support of the jurisdictional amount.[34] However, unlike the situation in *Hartford*, the amount demanded by Friedrichs in the demand letter is well in excess of the jurisdictional threshold and warrants a different result.[35] The Court thus finds that Geovera has met its burden of showing by a preponderance of the evidence that the amount in controversy is in excess of $75,000.

Having ascertained an amount in controversy in excess of the jurisdictional limits, the Court now addresses the post-removal stipulation which Friedrichs offers in her motion to remand and reply.[36] However, the precedent of the Fifth Circuit has foreclosed such a stipulation from altering the result in this case.

The *Gebbia* Court emphasized that the propriety of removal is determined by "[t]he jurisdictional facts . . . at the time of removal."[37] As a result, adjustments to jurisdictional facts by post-removal filings are exceptional: the impact of such filings on the Court's subject matter jurisdiction "*may* be considered *only if* the basis for jurisdiction is ambiguous at the time of

---

[32] *Id.* at 911.
[33] *Id.*
[34] *See* Demand Letter.
[35] *Compare* Demand Letter (demanding $126,203.87) with *Hartford*, 293 F.3d at 910 (discussing demand letter total of only $261.42).
[36] *See* Dkt. No. 9 at ¶ 16 ("Plaintiff is willing to stipulate that the amount in controversy does not exceed $75,000."); *see also* Dkt. No. 14 at ¶ 6 (As previously explained, Plaintiff agrees to stipulate that the amount in controversy, including attorney's fees, is less than $75,000.00.").
[37] *Gebbia*, 233 F.3d at 883 (citations omitted).

removal."[38] The Court's discretion in considering post-removal filings, such as the offered stipulation, is actuated only if the amount in controversy is shrouded in ambiguity, such that it is not "facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal."[39]

Friedrichs does not assert the requisite ambiguity about the amount in controversy. Moreover, the Court's review of the petition, the notice of removal and the supporting documentation reveals that such an assertion would be fruitless: the demand letter eliminates any ambiguity that the underlying claim satisfies the amount-in-controversy requirement.

### B. Discretionary Abstention

Friedrichs alternatively argues that the Court should exercise its discretion in declining jurisdiction over this matter.[40] In *Sherwin-Williams Co. v. Holmes County*,[41] a case upon which Friedrichs relies to support her alternative remand-basis, the Fifth Circuit held that district courts should apply seven factors in deciding whether to decline jurisdiction over a declaratory judgment action.[42] Those nonexclusive factors, set forth in *St. Paul Ins. Co. v. Trejo*,[43] include: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the

---

[38] *Id*. (emphasis added).
[39] *Id*.
[40] Motion for Remand at pp. 4 & 5.
[41] 343 F.3d 383 (5th Cir. 2003).
[42] *Sherwin-Williams Co*., 343 F.3d at 390.
[43] 39 F.3d 585 (5th Cir. 1994).

federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending ("*Trejo* Factors").[44]

However, contrary to Friedrichs' assertion, consideration of those factors does not recommend remand. First and foremost, the terms of the *Trejo* factors highlight a critical distinction to the instant case: they universally consider a declaratory judgment action that was filed by a potentially liable party and which relates to an underlying state case. Here, the declaratory action was filed by Friedrichs, the claimant, and there is no underlying state court case. Instead, the only action involved in this dispute is that which the Court has now determined is properly removed and within the Court's subject matter jurisdiction. Applying the *Trejo* factors to Friedrichs' claim, the Court finds that the factors warrant the Court's exercise of its jurisdiction, not its discretionary abstention.

### C. Conclusion

As a result of the above considerations, the Court finds that Geovera has met its burden to show that removal is proper, specifically with regard to showing an amount-in-controversy above the jurisdictional threshold. Further, the Court finds that an application of the *Trejo* factors does not warrant the Court declining jurisdiction over this matter. Therefore, the Court **DENIES** the Motion to Remand.

---

[44] *Trejo*, 39 F.3d at 590-91.

### III.  MOTION TO VACATE AND MOTION TO SET ASIDE

The Court, having ascertained its subject matter jurisdiction, proceeds to the motion to vacate and the motion to set aside.[45] As explained below, there is significant overlap between the applicable legal principles of the two separate motions and, as a result, the Court considers the motions concurrently.

#### A. Background

The nature of the parties' arguments recommends a detailed procedural history. On August 13, 2012, Geovera invoked the appraisal provision of the policy at issue.[46] In relevant part, the appraisal terms provide:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amounts agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.[47]

Thereafter, on September 6, 2012, Friedrichs designated her appraiser.[48] On September 14, 2012, eight days after designating her appraiser, Friedrichs filed both her original complaint, as well as her motion for appointment of an umpire ("Motion for Appointment").[49] In her motion for appointment, Friedrichs represented to the state court that "[t]he time period for an agreed [sic] to Umpire is set to expire on or about September 17, 2012."[50] In accordance with that

---

[45] Dkt. Nos. 4 (Motion to Vacate) & 11 (Motion to Set Aside).
[46] Dkt. No. 4, Attach. 1.
[47] Dkt. No. 4.
[48] Dkt. No. 4, Attach. 2.
[49] *See* Dkt. No. 1, Attachs. 3 ("Original Petition") and 4 ("Motion for Appointment").
[50] Motion for Appointment at ¶ 1.

representation, on September 17, 2012, the state court granted the motion and appointed Noe L. Perez as umpire.[51] On November 9, 2012, Mr. Perez issued an appraisal award.[52]

### B. Discussion

In the motion to vacate, Geovera challenges the appointment of the umpire on two, contractually-centered bases, arguing (1) that the appointment did not comply with the 15-day period to allow the appraisers to attempt an agreement on an umpire, and (2) that Friedrichs' appraiser did not respond to attempts at agreement on an umpire.[53] Mirroring Geovera's arguments against the appointment, the motion to set aside argues that the award process did not comply with the policy, and is thus voidable for lack of authority.[54] In response, Friedrichs asserts that the appointment and award were generally compliant with the contract, and further that the court order was required due to the failure of Geovera's appraiser to participate in the umpire-appointment process.[55] In the context of relevant case law, the Court sequentially considers each asserted basis for vacating the umpire appointment and setting aside the appraisal award.

As an initial matter, the Court notes that both motions challenge contractual authority: the issuing court's authority to appoint the umpire and the umpire's derivative authority to issue an award. Therefore, the Court begins its analysis by recognizing that an insurance policy serves the legal function of a contract between the insured and the insurer, and policy terms are to be so construed.[56] In the context of the appraisal process, the contractual grant of authority is

---

[51] *See* Dkt. No. 1, Attach. 5 ("Order of Appointment").
[52] Dkt. No. 11, Attach. 9 (noting that the umpire was appointed to act as umpire "in accordance with policy conditions.")
[53] *See* Motion to Vacate.
[54] Motion to Set Aside at pp. 5-6.
[55] *See* Vacate Response *and* Set-Aside Response.
[56] Provident Life & Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003) ("In interpreting these insurance policies as any other contract, we must read all parts of each policy together and exercise caution not to isolate particular sections or provisions from the contract as a whole.").

emphasized by Texas courts, which permit an otherwise-binding, insurance appraisal award to be disregarded where the award was made without authority.[57]

Geovera argues that the appointment and award breached an express policy term, a 15-day period before a party could move for appointment of umpire, and an implicit policy term, a requirement that the appraisers attempt to agree during that 15-day period. Prudence recommends considering express terms before implied terms, and so the Court first considers whether the appointment and resultant award breached the 15-day period, only proceeding to the to the implicit policy term if necessary (despite the significant briefing and documentary evidence about the appraisers' interactions).

The appraisal provision expressly states that a request for appointment of an umpire may be made "[i]f [the appraisers] cannot agree upon an umpire within 15 days [of the parties choosing an appraiser]."[58] Friedrichs chose her appraiser on September 6, 2012, but waited only eight days before moving for appointment of the umpire, erroneously asserting that the state court would have jurisdiction as of September 17, 2012.[59] Although Geovera implies bad faith in this procedural maneuvering, the Court need not reach that conclusion: calculating the contractual time period is a question of simple math, and Friedrichs' math was simply wrong.

Therefore, the September-17th order appointing the umpire, and certainly the September-14th motion for appointment, occurred prior to September 21, 2012, the earliest date the state court could be vested with contractual, appraiser-appointment authority under the policy. As a

---

[57] *See* Lundstrom v. United Servs. Auto. Ass'n–CIC, 192 S.W.3d 78, 87 (Tex.App.—Hous. [14th Dist.] 2006, pet. denied) (recognizing "three situations in which the results of an otherwise binding appraisal may be disregarded: (1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy.").

[58] *See* fn. 48, *supra*.

[59] *See* fns. 49 & 50.

result, the state court was without authority to appoint an umpire, and the appointed umpire was derivatively without authority to set the award.

Aside from repeated and conclusory assertions of contractual compliance, Friedrichs never directly addresses this argument.[60] Instead, Friedrichs' only reference to the timeliness is made in the context of addressing the requirement that the appraisers disagree, when she argues that "[i]t was futile for Plaintiff to delay any longer."[61] However, the appraisal clause makes no exception for futility; it sets forth a time period. Indeed, however futile the delay (a delay to which Friedrichs contractually agreed), it is at least as futile to violate a 15-day contractual period and assert contractual compliance.

### C. Conclusion

As explained above, the appraisal provision expressly sets forth a time period before a court is vested with authority to appoint an umpire. Friedrichs' motion for appointment of the umpire, as well as the subsequent appointment by the state court, violated that time period and were without contractual authority. Because the state court was without authority to appoint an appraiser, the appraiser lacked authority to issue an award.

---

[60] *See* Response at ¶¶ 16 & 19.
[61] Response at ¶ 16.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to remand. The Court **GRANTS** the motion to vacate and **VACATES** the appointment of Noe L. Perez as umpire. Finally, the Court **GRANTS** the motion to set aside and **SETS ASIDE** the appraisal award.

IT IS SO ORDERED.

DONE this 22nd day of February, 2013, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE